J-A13043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW CRAIG | : | |
| | : | |
| Appellant | : | No. 1139 EDA 2020 |

Appeal from the PCRA Order Entered March 11, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0007335-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: Filed: June 3, 2021

Appellant, Matthew Craig, appeals from the March 11, 2020, order

entered in the Court of Common Pleas of Montgomery County, which

dismissed Appellant's first petition filed under the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing. After

a careful review, we affirm.

The relevant facts and procedural history have been set forth, in part,

by this Court on direct appeal as follows:

> On June 12, 2014, Glenn Collins was working at RadioShack,
> located at 9 East Lancaster Avenue in Ardmore, Montgomery
> County, Pennsylvania. *See* Notes of Testimony (N.T.), 5/2/16, at
> 67-68. [At] [a]round 9:00 p.m., shortly before closing, Appellant
> and Latif Byard entered the store. *Id.* at 69. Appellant asked Mr.
> Collins whether the store sold Beats headphones and whether a
> particular model was in stock. *Id.* While he looked, Mr. Byard

---

[*] Former Justice specially assigned to the Superior Court.

locked the front door, and Appellant approached Mr. Collins with a gun. *Id.* at 69-70. Appellant ordered Mr. Collins into the basement and threatened to shoot him. *Id.* at 69-70, 74.

In the basement, Appellant and Mr. Byard forced Mr. Collins to lie face down on the floor while they searched his pants and took his keys, cell phone, and cash. *Id.* at 74-75. They obtained the lockbox key from Mr. Collins and filled their bags with cellular phones, Beats headphones, and video game systems. *Id.* at 75, 77. Appellant and Mr. Byard left Mr. Collins in the basement and fled the scene. *Id.* at 76. Mr. Collins called 911. *Id.* at 77. The value of the stolen merchandise totaled $20,635.52. *Id.*

Police officers responded to the scene and began their investigation. *See* N.T., 5/3/16, at 142-45. Mr. Collins was unable to make a positive identification of Appellant after viewing a photo array, although he later identified Appellant at the preliminary hearing and at trial. *See* N.T., 5/2/16, at 71-73. The store did not have security cameras. [*Id.*] at 68. Despite these setbacks, Mr. Byard was arrested on June 14, 2014, and his cell phone was seized by police. *See* N.T., 5/3/16, at 167. He had exchanged phone calls and Facebook messages with Appellant prior to the robbery. [*Id.*] at 177-85.

Appellant was arrested at *** Marston Street on June 19, 2014, and his cell phone [was] seized and examined by police. [*Id.*] at 151. This examination revealed that on May 21, 2014, Appellant [sent] a text message to a contact named "Karl" that read, "I sold more phones." *Id.* at 185-86. Appellant also called "Karl" before and after the instant robbery. [*Id.*] at [142-45,] 177-85. Based upon a generated cell phone site map of Appellant's number, police were able to determine that on the night of the robbery, he had initially made connections to cell phone towers near his house. *Id.* at 231-274. Appellant then began making different site connections en route to the scene of the robbery. *Id.* Triangulation of Appellant's cell phone showed that he was within close vicinity of the RadioShack because his phone made eight site connections between 8:48 p.m. and 9:10 p.m. *Id.* at 231-41. The phone did not connect again until 9:29 p.m. *Id.* at 241. At that time, it "pinged" in the vicinity of *** Marston Street in Philadelphia, Pennsylvania, the location at which Appellant was later arrested. *Id.*

On May 27, 2015, Mr. Byard entered a negotiated guilty plea to conspiracy to commit robbery. *See* N.T., 5/27/15, at 1-12. Mr. Byard testified that on June 12, 2014, he and Appellant committed

the robbery for which they were charged. *Id.* at 6. Following the entry of his plea, Mr. Byard was sentenced to time served to twenty-three months of incarceration and five years of consecutive probation. *Id.* at 12.

Prior to trial, the Commonwealth filed a motion *in limine* to introduce a text message Appellant had sent to "Karl" on May 21, 2014, three weeks prior to the robbery, reading "I sold more phones." *See* N.T., 5/3/16, at 136-37. Appellant was also accused of committing robberies of two Philadelphia RadioShacks on May 19, 2014, and May 31, 2014, respectively. *See* Trial Court Opinion (TCO), 5/22/17, at 19; *see also* Commonwealth's Mot. in Lim., 4/27/16, at 1. Ultimately, the text message was admitted, but evidence of the Philadelphia robberies was excluded by the trial court. *See* TCO at 19. Although Appellant originally objected to the admission of the text messages as evidence of prior bad acts, at trial, he requested that the court not read a curative instruction. *See* N.T., 5/3/16, at 137, 206.

In May 2016, Appellant's case proceeded to trial by jury. At trial, Mr. Byard admitted to committing the Ardmore robbery but denied Appellant's involvement. *See* N.T., 5/2/16, at 110-121. The Commonwealth impeached Mr. Byard with his prior testimony. *Id.* at 117-121. Both Appellant and the Commonwealth stipulated that phones recovered from Appellant and his codefendant at the time of their arrests had particular international mobile equipment identifier ("IMEI") numbers which belonged to Appellant and Mr. Byard. *See* TCO at 16.

The jury convicted Appellant of [robbery, theft by unlawful taking, and two counts of criminal conspiracy[1]] and acquitted him of an additional count of robbery. The Commonwealth filed a notice of intent to seek a ten-year mandatory sentence due to Appellant's conviction for a second and subsequent violent offense. On June 9, 2016, the court sentenced Appellant to two concurrent terms of ten to twenty years of incarceration. Appellant filed post-sentence motions, which were denied. [He then filed a timely direct appeal.]

*Commonwealth v. Craig*, No. 3663 EDA 2016, *1-4 (Pa.Super. filed 11/16/17) (unpublished memorandum) (footnote added).

---

[1] 18 Pa.C.S.A. §§ 3701(1)(ii), 3921, and 903, respectively.

On direct appeal, Appellant contended the trial court erred in admitting into evidence a text massage sent to "Karl" from Appellant which read, "I sold more phones." *Id.* at *5. Appellant specifically contended the message constituted inappropriate evidence of prior bad acts. *Id.* Further, Appellant contended the jury's verdict was against the weight of the evidence. *Id.* at *7. Specifically, he challenged the weight of the evidence based on Mr. Collins' failure to identify Appellant from the photo array, Mr. Byard's recantation of his earlier testimony, and the "heightened" weight placed on Detective Jean Morrison's testimony regarding a "cell site map" she had generated for Appellant's phone for the night of the robbery. *See id.* at *8-10. Finding no merit to Appellant's claims, we affirmed his judgment of sentence on November 16, 2017. *See id.* Thereafter, Appellant filed a timely petition for allowance of appeal, which our Supreme Court denied on May 2, 2018.

On September 11, 2018, Appellant filed a timely *pro se* PCRA petition, and counsel was appointed to represent him. On March 8, 2019, Appellant filed a counseled amended PCRA petition. On May 13, 2019, the PCRA court provided Appellant with notice of its intent to dismiss Appellant's PCRA petition without an evidentiary hearing, and on May 31, 2019, Appellant filed a counseled response. Appellant also filed a motion for a PCRA evidentiary hearing.

On January 29, 2020, the PCRA court held an evidentiary hearing on Appellant's PCRA petition. On March 11, 2020, the PCRA court denied

Appellant's PCRA petition, and Appellant filed a counseled notice of appeal on April 29, 2020. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

I.     Whether the PCRA Court abused its discretion in denying Appellant's request to add an alternate theory for Post-Conviction relief, on the issue of whether trial counsel rendered ineffective assistance for failing to file a Motion *in limine* to preclude an in-court identification because this issue is dependent upon a factual issue that this Court has to decide in determining whether or not there was a proper identification of Appellant by the store manager prior to trial?

II.    Whether pre-trial counsel rendered ineffective assistance by failing to file a Motion for line-up prior to the preliminary hearing, in light of the witness being unable to identify appellant from a photo array, given the day after the robbery?

III.   Whether trial counsel rendered ineffective assistance by failing to file a Motion to Suppress an in-court identification following a suggestive pre-trial identification, or otherwise object at the time of the in-court identification at trial?

Appellant's Brief at 4 (suggested answers omitted).

Preliminarily, we must determine whether we have jurisdiction over the instant appeal. Generally, a notice of appeal must be filed within 30 days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). Here, the PCRA court denied Appellant's PCRA petition on March 11, 2020; however, Appellant did not file his counseled notice of appeal until April 29, 2020, which is beyond the thirty-day period provided for in Rule 903(a). However, we decline to quash the instant appeal.

On March 16, 2020, the Pennsylvania Supreme Court declared "a general, statewide judicial emergency until April 14, 2020, on account of COVID-19." Supreme Court of Pennsylvania No. 531 Judicial Administration Docket, Order, 3/16/20, at 1. The order authorized the president judges in the individual judicial districts to, *inter alia*, "suspend time calculations for the purposes of time computation relevant to court cases…as well as time deadlines[.]" **Id.** at 2. The Supreme Court extended and expanded the scope of the judicial emergency in several supplemental orders, directing that the emergency shall cease on June 1, 2020. Supreme Court of Pennsylvania Nos. 531 & 532 Judicial Administration Docket, Order, 5/27/20.

Pursuant to the Supreme Court's March 16, 2020, order, the President Judge of the Montgomery County Court of Common Pleas declared a judicial emergency. In an order filed on March 16, 2020, the President Judge indicated:

> All statewide procedural and administrative rules involving time calculations within the 38th Judicial District for the filing of documents with the court or taking of judicially mandated action are suspended for the period of time covered by the emergency declaration. Beginning date March 12, 2020, ending date to be determined.

38th Judicial District Administrative Order (AD00001-2020), 3/16/20.

Thereafter, on March 31, 2020, the President Judge filed an administrative order extending the judicial emergency until April 30, 2020. Accordingly, based on the aforementioned, we decline to quash Appellant's

April 29, 2020, notice of appeal as untimely filed. Thus, we turn to a review of Appellant's issues.

Initially, we note it is well-settled that in addressing the grant or denial of post-conviction relief, we consider whether the PCRA court's conclusions are supported by record evidence and are free of legal error. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." *Commonwealth v. Scassera*, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

In his first issue, Appellant contends the PCRA court erred in denying his oral request to amend his PCRA petition to include an alternate theory of relief. Specifically, Appellant contends the PCRA court erred in denying his oral motion, made at the commencement of the PCRA hearing, to raise "an additional theory that counsel was ineffective for failing to file a Motion *in Limine* to preclude an in-court identification because it became apparent that a factual issue existed as to whether or not trial counsel knew that [Mr. Collins] would positively identify Appellant at trial." Appellant's Brief at 25 (citing N.T., PCRA Hearing, 12/13/19, at 5-13). Appellant argues the amendment of a PCRA petition is to be liberally allowed, and thus, the PCRA court abused its discretion in denying his request.

Appellant is correct that a "judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time" and that "[a]mendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A). However, because the rule states that the judge "may" allow amendment at any time, the decision to grant or deny such a request is at the discretion of the PCRA court. *See Commonwealth v. Keaton*, 615 Pa. 675, 45 A.3d 1050, 1059 n. 3 (2012) ("Although the Rules of Criminal Procedure permit amendment of a PCRA petition 'at any time' and state amendment 'shall be freely allowed to achieve substantial justice[,]' Pa.R.Crim.P. 905(A), it was within the PCRA court's discretion not to address [the] eleventh-hour supplemental issues during the hearing."). Thus, we must determine whether the PCRA court abused its discretion by denying Appellant's request to amend his PCRA petition.

At the commencement of the PCRA evidentiary hearing, the following relevant exchange occurred:

> **[APPELLANT'S PCRA COUNSEL]:** And with the Court's indulgence, the way that I couched that ineffectiveness claim was whether or not trial counsel should have filed a motion to suppress the in-court identification.
>
> With leave of Court, I would request that it be an alternative that also to encompass that issue is whether or not trial counsel was ineffective for failing to file a motion in limine to preclude an in-court identification because there is a factual issue that Your Honor is going to need to decide, and that goes to whether or not there had been a prior identification of [Appellant] by Mr. Collins prior to the trial.
>
> **THE COURT:** [PCRA counsel], why should I allow that at this point? We have a PCRA petition, we have had an amended

- 8 -

PCRA petition. This has been scheduled, initially trying to schedule it in July. We are now in December, and everyone has come here, and the Court and counsel prepared for the issues raised in your amended [petition].

So at this late stage, the morning of the hearing, why is that not prejudicial to the Commonwealth at this point?

**[APPELLANT'S PCRA COUNSEL]:** Well, Your Honor, we can keep the issue as framed, but if Your Honor finds that factually something different from what was decided previously. Specifically[,] your opinion addressing the issues raised on a direct appeal made a finding that there had, in fact, been an identification at the preliminary hearing by Mr. Collins, identifying [Appellant]. And the issue was raised in [the amended PCRA petition] in terms of whether or not there should have been a suppression of his in-court identification at the time of trial. And the testimony, as I anticipate to come out today, is that there was never an identification made by Mr. Collins of [Appellant] at the preliminary hearing.

**THE COURT:** [ADA], do you want to be heard on the request at this time to amend the allegations in the…PCRA [petition]?

**[ADA]:** Yes, Your Honor….The Commonwealth objects to this for a couple [of] reasons. First of all, we are not conceding that there was [no] identification at the preliminary hearing. We do have victim's sworn testimony, and should the issue come up, we will have corroborating testimony. So it's already established that there was an identification at the preliminary hearing. And—

**THE COURT:** You are speaking quickly. There was an identification?

**[ADA]:** Yes. And so we might hear something about that, that we are not conceding that, and we would be contesting any allegations to the contrary that there was no identification.

Moreover, procedurally, the Commonwealth objects to this attempt to amend the petition.

\*\*\*

Criminal procedural rules reflect that a PCRA judge may grant leave to amend and that amendment shall be freely allowed to achieve substantial justice. Nevertheless, it is clear from the rule's texts that leave to amend must be sought and obtained and, hence, amendments are not self-authorizing. Thus, for example,

a petitioner may not simply amend the pending petition with a supplemental pleading. Rather, Rule 905 explicitly states, an amendment is made only by direction or leave of the PCRA court. The petitioners may not automatically amend their petition in responsive pleadings.

Now that we are here the day of the hearing and there is an attempt to amend the petition, it's completely inappropriate….So at this late stage, even if some of this equivocal testimony does come out, which is rebutted by the record and the findings of the jury and the facts in the record as the trial court and Superior Court articulated, which would be corroborated by some testimony from the Commonwealth, it's just completely prejudicial, and we would object to it.

**[APPELLANT'S PCRA COUNSEL]:** Your Honor, if I may, there is an important fact that I think Your Honor needs to be aware of, and I believe that we are in a stipulation of this fact. The Public Defender's Office has misplaced the file of [Appellant]. So in drafting and preparing his PCRA [amended petition], I was limited to what is filed of record in the pleadings themselves. And the critical issue would be contained within a report that would have been prepared by the Public Defender,…who conducted the preliminary hearing. There were no notes of testimony taken from the preliminary hearing.

I was under the impression there was no report. The Public Defender's Office lost the file, and [the Public Defender] showed up today pursuant to the subpoena, and he has located his report. And in his report, he documents that there was no identification of the defendant at the time of the preliminary hearing. I did not come into knowledge of that fact until this morning when I spoke to [the Public Defender].

And the rule which was just cited says that a PCRA petition can be amended at any time and shall be freely allowed to achieve substantial justice.

The reason the PCRA [issue] was couched in terms of whether or not trial counsel was ineffective, in failing to file [a] motion to suppress the in-court identification, was that there was a presumption that there had, in fact, been an identification of [Appellant] prior to trial.

The evidence, which I think is going to be presented today, which is a factual decision that Your Honor will have to make, is whether or not there was, in fact, an identification of [Appellant]

prior to trial, and if there was, when that identification occurred because—

> **THE COURT:** Counsel, [the Public Defender] is not unknown to this Court. He is a regular practitioner here, as are you. This case was first scheduled in July. You have had many, many—and you have been appointed far before that and asked for leave of court for extensions of time to look into other matters. This is not something that could not have been known before the morning of trial, morning of this hearing, and at this time, to walk in and add a claim to your amended, already amended PCRA petition is unfair as no one was anticipating it. So your request is denied.

N.T., 12/13/19, at 6-13.

We find no abuse of discretion. As the PCRA court further elaborated in its Pa.R.A.P. 1925(a) opinion, Appellant had numerous opportunities to raise the alternate theory, which was based on his claim that Mr. Collins did not identify him at the preliminary hearing. For instance, Appellant could have raised the alternate theory of relief in his PCRA petition, his amended PCRA petition, or his reply to the PCRA court's order of its intent to dismiss. To the extent Appellant contends PCRA counsel could not have raised the issue prior to the PCRA evidentiary hearing, the PCRA court specifically rejected this argument and found "[t]his is not something that could not have been known before the morning of…this hearing[.]" *Id.* at 12. Thus, the PCRA court denied Appellant's eleventh-hour attempt to present an alternate theory of relief to the PCRA court. We find no error or abuse of discretion in this regard. *See Keaton*, *supra*; *Sattazahn*, *supra*.

In his next issue, Appellant contends trial counsel was ineffective in failing to file a motion for a line-up prior to the preliminary hearing. In this

regard, Appellant contends a line-up was necessary because Mr. Collins was unable to identify Appellant from a photo array, which was shown to him the day after the robbery. Appellant contends Mr. Collins identified him as a perpetrator for the first time when he was handcuffed at the preliminary hearing, which was a highly suggestive situation. Appellant contends his trial counsel "should have filed a Motion for a line-up to ensure that [Mr. Collins] would not come in and identify him in person at the time of the highly suggestive preliminary hearing." Appellant's Brief at 37.

Because there is a presumption that counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*, *supra*, 10 A.3d at 291 (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Id.*

Here, in rejecting Appellant's claim, the PCRA court concluded trial counsel had a reasonable basis for not filing a motion for a line-up prior to the preliminary hearing. Relevantly, the PCRA court indicated the following:

> Appellant [avers] that trial counsel's failure to request a pre-trial line-up was ineffective. [Trial] counsel testified that he did

- 12 -

not file a motion for a line-up because Appellant could not be identified from a photo array. [N.T., 12/13/19,] at 32. [Trial] counsel's report, which was admitted at the PCRA hearing, stated "Affiant could not ID anybody and does not recognize faces. Given photo array and could not pick out defendants." *Id.* at 35. If a pre-trial line-up resulted in a positive identification of Appellant as the robber, then identification testimony would have been admitted at trial.

PCRA Court Opinion, filed 11/23/20, at 6.

We find no error or abuse of discretion in this regard. At the PCRA evidentiary hearing, trial counsel specifically testified that, although he sometimes files a motion for a line-up prior to a preliminary hearing, he had specific reasons for not requesting one in Appellant's case. N.T., 12/13/19, at 32. Relevantly, the following exchange occurred on cross-examination of Appellant's trial counsel by the ADA at the PCRA evidentiary hearing:

**Q.** And you didn't request [a line-up prior to the preliminary hearing] in this case?

**A.** I did not.

**Q.** Why not?

**A.** Because he couldn't pick him out of the photo array.

**Q.** Why is that significant in your decision to not request a lineup?

**A.** Because if he had a lineup and [Mr. Collins] picked him out, it would have—I guess what I thought was, the best evidence had already happened. [Mr. Collins] couldn't pick him out of a photo array. The only thing that could happen is, now he figures who this guy is and picks him out.

**Q.** Is it fair to say, you would be giving the victim a second bite of the apple?

**A.** That's exactly what my thought process was.

*Id.* at 32-33.

It is well-settled that:

- 13 -

When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. As the Commonwealth accurately states, this cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." Our evaluation of counsel's performance is "highly deferential."

*Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440, 463 (2016) (citations and quotations omitted).

In the case *sub judice*, the PCRA court did not err in concluding trial counsel set forth a reasonable basis for not requesting a line-up prior to the preliminary hearing. *See id.* Trial counsel was aware that Mr. Collins had failed to identify Appellant from a photo array. He concluded that, since it was already established Mr. Collins could not identify Appellant prior to the preliminary hearing from a photo array, it would be an unnecessary risk to give Mr. Collins a second opportunity to identify Appellant prior to the preliminary hearing via a line-up. We agree with the PCRA court that this was a reasonable strategy designed to effectuate Appellant's interest. *See id.* Thus, we conclude trial counsel was not ineffective on this basis.

In his next issue, Appellant contends trial counsel was ineffective in failing to file a pre-trial motion to suppress Mr. Collins' in-court identification of Appellant as one of the perpetrators. Specifically, Appellant contends Mr. Collins was only able to identify Appellant as the perpetrator after he saw him

at the preliminary hearing, where he was handcuffed. Appellant asserts the basis of the in-court identification was the suggestive identification at the preliminary hearing and not the actual criminal acts; thus, any in-court identification by Mr. Collins should have been suppressed. Therefore, Appellant contends trial counsel was ineffective in failing to file a motion in this regard.

Assuming, *arguendo*, Appellant has demonstrated the underlying claim has arguable merit, and trial counsel had no reasonable basis for his inaction, we conclude Appellant has failed to demonstrate prejudice. **See Ali**, **supra**. Specifically, Appellant has failed to demonstrate that, but for Mr. Collins' in-court identification testimony,[2] there is a reasonable probability that the outcome of the proceedings would have been different as it relates to Appellant's identity as one of the robbers.

> To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 608 Pa. at 86–87, 10 A.3d at 291.

_____

[2] We note the jury was informed that Mr. Collins could not identify Appellant from a pre-trial photo array. At Appellant's trial, Mr. Collins testified he got a "general look" at the perpetrators but that his "eyes were sort of focused on the gun—for the most part." N.T., 5/2/16, at 70. However, Mr. Collins positively indicated that he recognized Appellant as one of the perpetrators. **Id.** at 71.

***Commonwealth v. Spotz***, 624 Pa. 4, 84 A.3d 294, 312 (2014) (citations omitted).

Here, aside from Mr. Collins' identification testimony at trial, which was vigorously cross-examined by trial counsel, the Commonwealth offered overwhelming evidence of Appellant's participation in the robbery. Initially, Latif Byard entered a negotiated guilty plea as to his participation in the robbery. N.T., 5/2/16, at 116. During his guilty plea hearing, the transcript of which the Commonwealth entered into evidence at Appellant's trial, Mr. Byard admitted that Appellant threatened the RadioShack store manager, Mr. Collins, while Mr. Byard acted as a lookout. ***Id.*** at 117; N.T., Byard Guilty Plea, 5/27/15, at 8. Also, Mr. Byard admitted during his guilty plea colloquy that Appellant left the RadioShack with Beats headphones and 24 various other electronics equipment. N.T., 5/2/16, at 117. When Mr. Byard recanted at Appellant's trial by indicating Appellant, who was his friend, was not present during the robbery, the Commonwealth extensively cross-examined Mr. Byard with the use of his guilty plea colloquy transcript. ***Id.*** at 117-121.

Furthermore, as the trial court indicated in summarizing the evidence in its opinion on direct appeal:

> Officer David LaRosa responded to the RadioShack following the robbery. (***Id.*** at 144-45). Officer LaRosa…explained the Commonwealth's lack of video surveillance and fingerprint evidence. Specifically, there was neither security surveillance inside the RadioShack nor reliable security footage outside the store, which was corroborated by [Mr. Collins] who was the manager of the store. (***Id.*** at 145-46, 149). There was only one (1) fingerprint that was able to be lifted from the scene and it was

of such poor quality that it was not sent for further analysis. (*Id.* at 147).

Nevertheless, Officer LaRosa gave testimony that connected Appellant to his registered cell phone, which ultimately was used to determine Appellant's location at the RadioShack on the date and at the time of the robbery. In fact, both parties stipulated, *inter alia,* to the following: a white iPhone *SC*, with International Mobile Equipment Identifier ("IMEI") number *** and phone number ***-***-0013, was found on and registered to Appellant when he was arrested on June 19, 2014; and a green iPhone *SC*, with IMEI number *** and phone number ***-***-9605, was found on Co-conspirator Byard when he was arrested on June 14, 2014. (*Id.* at 225). Throughout Officer LaRosa's testimony, he explained that Appellant's cell phone "pinged" a cell phone tower in the area near the RadioShack on the day of the robbery, making calls specifically to contacts labeled "Dad" and "Sister," presumably Appellant's familial relations. (*Id.* at 149-204, 286)….Additionally, there was evidence that [Appellant made] a call…before and after the robbery to a contact, "Karl," as well as a text [to] "Karl" before the robbery that read, "I sold more phones." (*Id.* at 149-204, 289-90). This communication to "Karl" from Appellant's phone was admitted into evidence to prove Appellant's intent, motive, and plan in robbing the RadioShack of cell phones and other expensive electronic merchandise, *i.e.,* to sell them for profit.

Jean Morrison, a detective with the Montgomery County Detective Bureau - Major Crimes Unit who specializes in cellular site mapping, testified as an expert witness for the Commonwealth. (*Id.* at 218-21). According to Detective Morrison, cell mapping entails gathering call detail records; including dates, times, and locations of connections to a particular cell site (or "cell tower"); from the cell phone carrier (in this case, AT&T) and constructing a map of those listings. (*Id.* at 219, 221). She also explained that each cell phone has a unique identifier known as an IMEI. (*Id.* at 223). With this information, one is able to determine the general location of a cell phone because a cell phone must be in the vicinity of the cell site in order to communicate with it. (*Id.* at 227). Detective Morrison created a cell site map for Appellant's phone (phone number ending in 0013) for June 12, 2014, the day of the robbery. *See* Exhibit C. The map is limited to the time period surrounding the robbery, *i.e.,* between 8:00 P.M. and 10:36 P.M., and contains red circles (representative of a half-mile radius) illustrating site connections, which are the

- 17 -

AT&T cell sites in the general area of the RadioShack that were used during the relevant time frame by Appellant's cell phone. (***Id.*** at 237-38, 254). The cell site map revealed the travel pattern of Appellant's cell phone during the relevant time period. (***Id.*** at 239). Specifically, a zoomed-in version of the map shows Appellant's cell phone initially made site connections around his home (*** North 45th Street, Philadelphia, Pennsylvania), between 8:00 P.M. and 8:34 P.M., then began making different site connections en route to the RadioShack between 8:43 P.M. and 9:10 P.M. (***Id.***). Notably, at 8:48 P.M., there is a triangular area on the map indicating three (3) site connections were made at that time; Detective Morrison explained that AT&T displays every site connection made during the entirety of a communication, *i.e.*, a text or call, and thus, one can see that when Appellant's cell phone was in use at 8:48 P.M. it made connections to the three (3) different cell sites. (***Id.*** at 242-43). Appellant's cell phone ended up in the close vicinity (within 3,500 feet) of the RadioShack because eight (8) site connections were made there between 8:48 P.M. and 9:10 P.M. (***Id.*** at 244). After 9:10 P.M., the cell phone begins to make site connections away from the RadioShack, ultimately ending up within 2,700 feet of *** Marsden St., Philadelphia, Pennsylvania (place of Appellant's arrest one (1) week after the robbery) where thirteen (13) site connections were made between 9:46 P.M. and 10:36 P.M. (***Id.*** at 239-42, 244-45). From this mapping evidence, one can see Appellant's phone was in the area of the RadioShack at the time the robbery occurred (approximately between 8:57 P.M. and 9:08 P.M., when [Mr. Collins] made the 911 call), and that the phone left the area and ended up at Appellant's place of arrest. (***Id.*** at 284-86).

Trial Court Opinion, filed 5/22/17, at 16-18 (footnotes omitted).

Based on the aforementioned, we agree with the PCRA court that, absent Mr. Collins' identification testimony, there is no reasonable probability that the outcome of Appellant's trial would have been different. ***Spotz***, ***supra***. Accordingly, Appellant has failed to meet the prejudice prong of the ineffectiveness test, and, thus, he is not entitled to relief on his ineffective assistance of counsel claim. ***See id.***

For all of the foregoing reasons, we affirm.

Affirmed.

Judge Dubow joins the memorandum.

P.J.E. Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/21